## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| ROSIE YANAS, et al. | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO.: 3:20−cv−00141 |
| | § | |
| ANTONIOS PAGOURTZIS, et al. | § | |
| *Defendants.* | § | |

## DEFENDANT LUCKYGUNNER'S RULE 12(b)(6) MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

Defendant, LuckyGunner, LLC ("LuckyGunner"), by its undersigned attorneys, and pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss Plaintiffs' Third Amended Petition and First Amended Petition.

## INTRODUCTION

This consolidated lawsuit arises from the criminal shooting at Santa Fe High School in May 2018. Plaintiffs, here, include two groups – the "Yanas Plaintiffs" and the "Beazley Plaintiffs" – who were tragically injured or killed by the shooter. Plaintiffs wrongly contend LuckyGunner is legally responsible for the shooter's criminal acts because it sold ammunition allegedly used in the shooting without verifying the truth of the purchaser's representation that he was not less than 21 years old, the minimum age for legal possession of ammunition used only in handguns.

Plaintiffs' case should be dismissed because, under the facts alleged, LuckyGunner did not violate any law applicable to ammunition sales in Texas, and neither the federal

1

statute governing LuckyGunner's sale nor Texas law imposed a duty on LuckyGunner to conduct an investigation into the purchaser's represented age, or a duty to protect Plaintiffs from the purchaser's subsequent criminal acts. The existence of a duty is question of law for the Court to decide. *Otis Engineering Corp. v. Clark*, 668 S.W. 2d 307, 308-11 (Tex. 1983).

Plaintiffs' case should be dismissed for the additional reason that LuckyGunner has threshold immunity under the Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901 *et seq.* ("PLCAA"), from any claim based, in whole or in part, on its alleged failure to exercise reasonable care to verify that the purchaser represented his age truthfully. Whether LuckyGunner is entitled to immunity under the PLCAA is a question of law appropriately decided under Rule 12(b)(6). *See, e.g.*, *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1220 (D. Colo. 2015); *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 44 (D.D.C. 2013).

## THE YANAS PLAINTIFFS' THIRD AMENDED PETITION ("Yanas TAP") AND THE BEAZLEY PLAINTIFFS' FIRST AMENDED PETITION ("Beazley FAP")

In their original petitions, Plaintiffs named only the shooter and his parents as defendants, alleging various negligence and intentional tort theories of liability. Plaintiffs' now operative, amended petitions added five additional defendants: (1) LuckyGunner, (2) Red Stag Fulfillment, LLC ("Red Stag"), (3) Mollenhour Gross, LLC ("MG"), (4) Jordan Mollenhour ("Mollenhour"), and (5) Dustin Gross ("Gross") (collectively, "Defendants"). Plaintiffs allege that Red Stag, a third-party logistics company, packaged and shipped the ammunition, which non-party FedEx then delivered. (DE 1-3 at pp. 133-183, Yanas TAP

2

at ¶41; DE 1-3 at pp. 193-218, Beazley FAP at ¶33.)  MG allegedly owns LuckyGunner and Red Stag, and Mollenhour and Gross allegedly own MG. (Yanas TAP at ¶58; *see also* Beazley FAP at ¶64.)  The alleged liability of each of these Defendants is predicated on LuckyGunner's online sale of ammunition allegedly used in the shooting.  (*See e.g.*, Yanas TAP at ¶¶80, 17-24, 40-41, 54-70; Beazley FAP at ¶¶30-32, 34, 41-49, 60-72, 75-76.)

Plaintiffs allege LuckyGunner's sale of the ammunition constituted negligence and negligence *per se*. (Yanas TAP at ¶¶125-141; 152-165; Beazley FAP at ¶¶41-49, 75-78.)[1] The crux of Plaintiffs' claims is that LuckyGunner violated the Youth Handgun Safety Act, 18 U.S.C. § 922(x)(1)(B), when it sold ammunition allegedly used in the shooting. Section 922(x)(1)(B) prohibits the transfer of ammunition "suitable for use only in a handgun" to a person who the "transferor knows or has reasonable cause to believe" is under 21 years old.  Plaintiffs also allege that LuckyGunner aided and abetted the shooter's violation of 18 U.S.C. § 922(x)(2)(B), which makes it unlawful for a person under 21 years old to possess ammunition "suitable for use only in a handgun." (*See* Yanas TAP at ¶¶44, 73-77, 128, 133, 139-140, 153, 160-161; Beazley FAP at ¶¶45, 53, 68, 75-76.)[2]

---

[1] Plaintiffs also assert derivative or collateral claims that the Defendants were grossly negligent, and that vicarious liability exists for LuckyGunner's ammunition sale based on claims styled as "civil conspiracy" and "piercing the corporate veil". (Yanas TAP at ¶¶166-189; Beazley FAP at ¶¶50-74, 79-82.)  The Beazley Plaintiffs further assert a bare-bones "*res ipsa loquitor*" claim, alleging that the "guns and ammunition were within the exclusive control" of unspecified defendants at an unspecified time. (Beazley FAP at ¶¶90.)

[2] Section 922(x)(1) does not place an age-based restriction on the sale or possession of ammunition that is suitable for use in rifles and shotguns.  The ammunition at issue in this case—.38 caliber—was suitable for use in rifles, and therefore was not "suitable for use only in a handgun."

## RULE 12(B)(6) LEGAL STANDARDS

A complaint that fails to state a claim upon which relief can be granted should be dismissed pursuant to Rule 12(b)(6). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal*, 556 U.S. at 670. "To enter the realm of plausible liability," a complaint must satisfy two hurdles. *Twombly*, 550 U.S. at 557 n. 5. To clear the initial hurdle, a plaintiff must frame a "complaint with enough factual matter (taken as true) to suggest" that he is entitled relief. *Twombly*, 550 U.S. at 556. As to what constitutes sufficient "factual matter," the Supreme Court has cautioned that a legal conclusion is not transformed into a factual allegation merely because a complaint represents its conclusions as facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Furthermore, it is "not . . . proper to assume that [a plaintiff] can prove facts that it has not alleged." *Associated Gen. Contractors of Calif. V. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

To clear the second hurdle, the factual allegations must do more than claim conduct "merely consistent" with actionable wrongdoing. *Iqbal*, 556 U.S. at 678. Failure to do so "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* Where the pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint is insufficient to state a claim. *Iqbal*, 556 U.S. at 679.

4

Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* In short, a complaint should be dismissed, when, on its face, it is devoid of facts necessary for the plaintiff to prevail under the cause of action asserted, or when the complaint itself discloses facts that necessarily defeat the causes of action pled.

## ARGUMENT

Under these established principles, Plaintiffs have failed to state viable claims against LuckyGunner.  The PLCAA applies to this lawsuit, and although a well-pleaded negligence *per se* claim is an exception to PLCAA immunity, Plaintiffs' claim is not well-pled.  Plaintiffs have not alleged facts showing that LuckyGunner violated Section 922(x)(1)(B) because it knew the purchaser was a juvenile, or that the juvenile gave LuckyGunner a reasonable cause to believe he was not old enough to purchase the ammunition. Indeed, Plaintiffs have alleged that contrary information was provided to LuckyGunner: The purchaser certified he was not under 21 years old. To circumvent this alleged fact, Plaintiffs seek to impose a much broader duty than Section 922(x)(1)(B) requires: a duty of inquiry—essentially a background check on ammunition purchasers— that neither Congress nor the Texas legislature has seen fit to require.

Plaintiffs' ordinary negligence claim is barred because the PLCAA does not provide an exception for ordinary negligence actions.  But even if Congress had provided such an exception to PLCAA immunity, Plaintiffs' ordinary negligence action fails because LuckyGunner did not owe Plaintiffs a duty under Texas law to protect them from the shooter's criminal acts. Plaintiffs' remaining derivative and collateral claims fail along

5

with Plaintiffs' failed negligence and negligence *per se* claims.[3]

### A.    The PLCAA Generally Prohibits Actions Against Ammunition Sellers for Damages Arising From the Criminal Misuse of Ammunition by Third Parties.

The PLCAA generally prohibits lawsuits against firearms and ammunition manufacturers, distributors, sellers, dealers, and importers for damages arising from the criminal misuse of firearms and ammunition by third parties. 15 U.S.C. § 7903(5)(a); 15 U.S.C. § 7901(b)(1). Among the findings made by Congress was that "[t]he manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State and local laws" and those engaged in firearms and ammunition sales "are not, and should not be, liable for the harm caused by those who criminally misuse" firearms and ammunition. 15 U.S.C. §§ 7901(a)(4) & (a)(5).

In providing immunity for such actions, Congress recognized that under long-standing common law, manufacturers and sellers are not responsible for criminal acts perpetrated with firearms and ammunition. *See* 15 U.S.C. § 7901(a)(7) ("The liability actions commenced or contemplated by the Federal Government, States, municipalities, and private interest groups and others are based on theories without foundation in hundreds

---

[3] Defendants Red Stag, MG, Mollenhour, and Gross are filing contemporaneous Rule 12(b) motions, which include Rule 12(b)(2) arguments based on the absence of personal jurisdiction, among other grounds. Defendants have reviewed Galveston District Court Rules of Practice (No. 6) for Rule 12(b) motions, which also references Rule 12(a)'s "time requirements" for Rule 12(b) motions. Because the present action was removed from state court, Rule 81(c) is also implicated, and, out of an abundance of caution, Defendants file their Rule 12(b) motions and forego serving Plaintiffs with letters of intent to file motions to dismiss. Although Defendants do not believe amendments to the operative petitions would have merit or cure the dispositive arguments presented in Defendants' motions, the option to amend remains under the practice in this Division and Rule 15(a)(1)(B).

of years of the common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law."). Congress found lawsuits seeking to hold firearm and ammunition industry members liable for damages resulting from criminal firearm and ammunition misuse to be "an abuse of the legal system," and it enacted the PLCAA to ensure that those who are involved, *inter alia*, in the sale of ammunition are not subjected to lawsuits alleging "harm caused by those who criminally or unlawfully" misuse ammunition. *See* 15 U.S.C. §§ 7901(a)(5) & (6).[4]

This lawsuit falls squarely within the immunity the PLCAA affords to ammunition sellers. The PLCAA states that "[a] qualified civil liability action may not be brought in any Federal or State court" against, *inter alia*, any seller of ammunition. 15 U.S.C. § 7902. Congress defined a "qualified civil liability action" as:

> [A] civil action or proceeding or an administrative proceeding brought by any person against any manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or by a third party...."

---

[4] Every federal and state appellate court to address the constitutionality of the PLCAA has found it constitutional. *See Ileto v. Glock*, 565 F.3d 1126, 1138-42 (9th Cir. 2009), *cert denied*, 130 S.Ct. 3320 (2010); *City of New York v. Beretta*, 524 F.3d 384, 392-98 (2nd Cir. 2008), *cert denied*, 129 S. Ct. 3320 (2009); *District of Columbia v. Beretta*, 940 A.2d 163, 172-82 (D.C. 2008), *cert denied*, 129 S. Ct. 1579 (2009); *Estate of Kim ex rel v. Coxe*, 295 P.3d 380, 382-92 (Alaska 2013); *Adames v. Sheehan*, 909 N.E.2d 742, 764-65 (Ill. 2009), *cert denied*, 130 S.Ct. 1014 (2009). In addition, at least three trial courts have issued opinions affirming the PLCAA's constitutionality. *See Phillips*, 84 F. Supp. 3d at 1222; *Estate of Charlot v. Bushmaster Firearms, Inc.*, 628 F. Supp. 2d 174, 182-86 (D.D.C. 2009); *Gilland v. Sportsmen's Outpost, Inc.*, 2011 WL 2479693, *16-23 (Conn. Super. May 26, 2011). And numerous courts have applied the PLCAA to dismiss lawsuits without confronting challenges to its constitutionality. *See, e.g., Al-Salihi v. Gander Mountain, Inc.*, 2013 WL 5310214 (N.D.N.Y. Sept. 20, 2013); *Jeffries v. District of Columbia*, 916 F. Supp. 2d 42 (D.D.C. Jan. 8, 2013); *Bannerman v. Mountain State Pawn, Inc.*, 2010 WL 9103469 (N.D.W.Va. Nov. 5, 2011); *Ryan v. Hughes-Ortiz*, 81 Mass.App.Ct. 90 (Mass. App. 2012).

15 U.S.C. § 7903(5)(A).

A "qualified product" includes ammunition as defined in 18 U.S.C. § 921(a)(17)(A) ("The term 'ammunition' means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm."). 15 U.S.C. § 7903(4). The PLCAA defines "seller" as "a person engaged in the business of selling ammunition . . . at the wholesale or retail level." 15 U.S.C. § 7903(6)(c). The PLCAA further defines "engaged in the business" as "a person who devotes time, attention, and labor to the sale of ammunition as a regular course of trade or business with the principal objective of livelihood and profit through the *sale or distribution* of ammunition." 15 U.S.C. § 7903(1) (emphasis added). Plaintiffs' allegations demonstrate LuckyGunner is a "seller" of a "qualified product," and entitled to PLCAA protection.

Although Congress provided certain, narrow exceptions to "qualified civil liability action" immunity under the PLCAA, including a negligence *per se* action, Plaintiffs' allegations are not sufficient to trigger the exception, and LuckyGunner is entitled to immunity. *See* 15 U.S.C. § 7903(5)(A)(i)-(vi).

**B.      Plaintiffs' Negligence *Per Se* Claim Is Insufficiently Pleaded and Should Be Dismissed.**

For a cause of action to avoid PLCAA immunity, it must be recognized under applicable state law and sufficiently pleaded. [5]   Plaintiffs' negligence *per se* claim is the

---

[5] The PLCAA does not create a negligence *per se* action or any other cause of action because Congress expressly provided that the PLCAA does not "create a public or private cause of action or remedy" for persons harmed by the criminal misuse of firearms or ammunition. 15 U.S.C. § 7903(5)(C).

only potential exception to PLCAA immunity in this case.[6] That claim is based on the allegation that LuckyGunner violated Section 922(x)(1)(B) because it transferred .38 caliber ammunition to the shooter, who, despite representing that he was not under 21 years old, was a 17 year old juvenile.   (Yanas TAP at ¶¶43-44, 55-57, 66-69, 73-76, 80, 128, 133-136, 139-140, 153, 156-157, 159-162; Beazley FAP at ¶¶30-32, 41, 45, 48, 52-54, 69-70, 75-76.)

Section 922(x)(1)(B) provides that:

> (1)   It shall be unlawful for a person to sell, deliver, or otherwise transfer to a person who the transferor knows or has reasonable cause to believe is a juvenile—
>
>> (A) a handgun; or
>> (B) ammunition that is suitable for use only in a handgun.

Thus, a violation of Section 922(x)(1)(B) requires that: (1) the transferor actually knows or is a given reasonable cause to believe the purchaser of the ammunition is a juvenile, and (2) the ammunition transferred is "suitable for use only in a handgun." Plaintiffs' allegations fail to satisfy either element, and they have not therefore plausibly alleged a violation of the statute.

---

[6] Another negligence-based exception to PLCAA immunity is an action for negligent entrustment, 15 U.S.C. § 7903(5)(A)(ii), which Plaintiffs have not attempted to plead against the Defendants. For good reason: Texas does not recognize a negligent entrustment action against the seller of a product: "[W]e find negligent entrustment does not apply to the sale of a chattel." *Nat'l Convenience Stores, Inc. v. T.T. Barge Cleaning Co.*, 883 S.W.2d 684, 687 (Tex. App. 1994), *writ denied* (Jan. 12, 1995); *James v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 304 (Tex. App. 1999); *Allen v. Wal-Mart Stores, LLC*, 2017 WL 978702, *11 (S.D. Tex. Mar. 14, 2017) (collecting cases), *motion for relief from judgment denied*, 2017 WL 7688383 (S.D. Tex. May 31, 2017).

### 1. Plaintiffs have not plausibly alleged LuckyGunner knew or was given a reasonable cause to believe the purchaser was a juvenile.

As to the first element, Plaintiffs have not pleaded facts showing LuckyGunner actually knew the purchaser was a juvenile. Indeed, Plaintiffs could never adequately plead LuckyGunner's actual knowledge because they affirmatively allege facts that defeat its existence. Plaintiffs allege that to complete the sale of ammunition, the purchaser "was required" to "check a box agreeing to a standard set of terms and conditions, one of which is that the purchaser is not under 21." (Yanas TAP at ¶74; *see also* Beazley FAP at ¶¶69-70.) Plaintiffs allege that as part of LuckyGunner's "Terms and Conditions" the "customer agrees that he or she is 'not currently less than twenty-one (21) years old'". (Yanas TAP at ¶68; *see id.* at ¶76; *see also* Beazley FAP at ¶69-70.)[7] Thus, the information communicated by the purchaser to LuckyGunner was that he was not under 21 years old.

With respect to Plaintiffs' burden to plead that LuckyGunner was nevertheless given a reasonable cause to believe the purchaser was a juvenile, they claim only that the purchaser's use of an American Express gift card to purchase the ammunition provided constructive notice to LuckyGunner that the purchaser was underage. This allegation is

---

[7] *See also* LuckyGunner's terms and conditions: https://www.luckygunner.com/terms-and-conditions (last visited May 4, 2020). "'[D]ocuments that a defendant attaches to its motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citation omitted). "By such attachments the defendant simply provides additional notice of the basis of the suit to the plaintiff and aids the Court in determining whether a claim has been stated." *Allen v. Wal-Mart Stores, LLC*, 2017 WL 978702, *6 (S.D. Tex. Mar. 14, 2017) (citing *Collins*, 224 F.3d at 499). And "attachments may also provide the context from which any quotation or reference in the motion is drawn to aid the court in correctly construing that quotation or reference." *Allen*, 2017 WL 978702 at *6 (citing *In re Enron Corp. Securities, Derivative & "ERISA" Litig.*, No. H–04–0087, 2005 WL 3504860, at 11 n.20 (S.D. Tex. Dec. 22, 2005)).

absurd and should be rejected as implausible and nonsensical. It is common knowledge that persons of all ages frequently use gift cards to make online purchases of all types of products, and their use does not in any sense convey information about the card user's age. Determining whether an allegation is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If an allegation is so general that it encompasses a wide swath of conduct, much of it innocent, then a plaintiff has "not nudged [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Illustrating this point is *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216 (D. Colo. 2015), a lawsuit that arose from a shooting at a movie theater in Aurora, Colorado. In *Phillips*, the court also rejected as implausible the plaintiffs' allegation that the large quantity of ammunition purchased provided LuckyGunner with actual or constructive knowledge of the purchaser's criminal intent:

> The only fact that plaintiffs offer to suggest that defendants should have questioned Holmes is the amount of ammunition and other potentially dangerous materials that he purchased, but there is nothing inherently suspicious about large internet orders. Consumers often buy large quantities of goods over the internet for the convenience of one transaction and to secure a better price. Indeed, one of the defendants' trade names is htttp://www.BulkAmmo.com (emphasis added). Tellingly, there are no allegations that the quantities purchased by Holmes exceed any state or federal law placing limits on the amount of ammunition or other dangerous material a person may possess at any one time.

*Id*. at 1226. LuckyGunner was held to have no reason to know, despite conclusory allegations to the contrary, that the shooter was dangerous or an otherwise prohibited purchaser.

The result in this case should be no different.  Plaintiffs have not pled facts demonstrating that LuckyGunner knew the purchaser was a juvenile, but have alleged that the purchaser provided contrary information to LuckyGunner—that he was not under 21 years old.  And Plaintiffs do not plausibly allege that any other information imparted to LuckyGunner by the purchaser gave it "a reasonable cause to believe" he was not legally entitled to purchase the ammunition.  There is nothing "inherently suspicious" about the use of an AmEx gift card to make an online purchase of goods.

Like the court in *Phillips*, courts in Texas and across the country have recognized that the reasonable cause to believe standard does not include a duty to independently investigate a purchaser's qualifications to purchase and possess firearms or ammunition. *See Bryant v. Winn–Dixie Stores, Inc.*, 786 S.W.2d 547, 549 (Tex. App.—Ft. Worth 1990, writ denied) (federal firearm statute does not impose a duty on the part of an ammunition seller to inquire into criminal history or mental stability of purchaser); *Knight v. Wal-Mart Stores*, 889 F.Supp. 1532, 1536 (S.D. Ga. 1995) (the "reasonable cause to believe" standard "does not simulate the common law duty of ordinary care," and create a duty of inquiry).

To establish a seller had "reasonable cause to believe" a person was a prohibited purchaser, there must be a plausible allegation that the seller had "knowledge of facts which, although not amounting to direct knowledge, would cause a reasonable person, knowing the same things, to conclude that the other person was in fact" a prohibited purchaser. *United States v. Fifty-Two Firearms*, 362 F.Supp. 2d 1308, 1313 (M.D. Fla. 2005).  The standard is a subjective inquiry and requires the defendant's "scienter to be evaluated through the lens of the particular defendant, rather than from the perspective of

a hypothetical reasonable man." *United States v. Munguia*, 704 F.3d 596, 603 (9th Cir. 2012). The "reasonable cause to believe" standard "when used for civil liability, is more favorable to [defendants] than the common law negligence standard" because it requires a reason to believe that a fact exists, not merely reason to believe that a fact might exist on further inquiry. *Knight*, 889 F.Supp. at 1536-37 ("[A] dealers' duty of care under general principles of negligence . . . varies substantively" from "the specific requirements of the [GCA].").[8] The cases addressing the "reasonable cause to believe" standard in the context of firearms and ammunition sales focus on what a defendant actually knew at the time of the sale and what reasonable inferences could be drawn from those subjectively known facts. *See, e.g., United States v. Collins*, 350 F.3d 773, 777 (8th Cir. 2003) (Gun Control Act § 922(d)(3) requires an evaluation of transferor's knowledge of the transferee's status as an unlawful drug user "at the time" of transfer). What additional knowledge could have been discovered by a seller on further inquiry is irrelevant to whether the seller had a "reasonable cause to believe."

*Heatherton v. Sears, Roebuck and Co.*, 445 F.Supp. 294, 304-05 (D. Del. 1978), *rev'd on other grounds*, 593 F.2d 526 (3d. Cir. 1978), further illustrates the point. There, the defendant was alleged to have negligently sold a firearm to a convicted felon, who used

---

[8] The "reasonable cause to believe" standard "is present in numerous federal statutes." *United States v. Saffo*, 227 F.3d 1260, 1268 (10th Cir. 2000) (prosecution for possession with intent to distribute pseudoephedrine under 21 U.S.C. § 841(d)(2)) (collecting federal statutes, including the GCA)). The type of factual allegations required to show "reasonable cause to believe" is not substantially different from actual knowledge. *United Sates v. Johal*, 428 F.3d 823, 828 (9th Cir. 2005). Both standards "turn[] on the facts actually known by the defendant in a particular case," not what could have been learned based on a reasonable inquiry. *Id*.

13

the firearm to injure the plaintiff.  The plaintiff claimed the defendant violated § 922(b)(2) of the Gun Control Act and was guilty of common law negligence because it did not investigate the truthfulness of the purchaser's answer on the sales transaction form that he had not been convicted of a felony.  According to the plaintiff, the defendant would have discovered the felony conviction "merely by making one phone call" to the local police department. *Id.* at 310.[9]  The court, however, refused to recognize a common law duty on the part of a firearm seller to investigate purchasers.  Relying on sections 308 and 390 of the *Restatement (Second) of Torts* dealing with negligent entrustment of chattels, the court observed that "the comments to the sections do not suggest that the controller or supplier has any duty to make an investigation of the background of the person to whom he entrusts the item." *Id.* at 302.  The court reasoned:

> This Court feels some reluctance to create new standards of conduct for sellers when legislators have declined to incorporate such standards into the statutory schemes. Finally, it is difficult to define the limits of a possible duty to investigate on the part of firearms sellers. Plaintiffs urge that they would expect a seller only to take steps which are "reasonable" in light of the possible risk to human life. However, they do not suggest any way to define the amount of effort which would be reasonable.

*Id.* at 304-05.

In *Heatherton*, the defendant "had no actual knowledge" of the purchaser's criminal record, and there was nothing else that gave the defendant a "reason to know" the purchaser lied on the sales transaction form about his criminal history, such as "conversation or

---

[9] The *Heatherton* case was decided before federal law required that firearms purchasers be subjected to law enforcement background checks. *Heatherton* remains instructive federal law concerning ammunition sales, for which background checks are not required.

demeanor." *Id*. at 304. With regard to the claim that the defendant violated § 922(b)(2) of the Gun Control Act by not confirming that the sale was in compliance with state law, the court similarly held that when a dealer is "unaware of circumstances that would detract" from the conclusion that a purchase is in compliance with the law, a dealer has "reasonable cause to believe that a purchase is not in violation" of § 922(b)(2) of the Gun Control Act. *Id*. at 300-01.

The policy implications of imposing a duty to inquire based on reasonable care would be substantial, and satisfying such an open-ended duty in day-to-day transactions impossible. As the court in *Phillips* recognized:

> Imposing the broader "reasonable care" standard on suppliers, encompassing obligations to inquire, investigate, screen, monitor and evaluate buyers and their intentions, *would potentially create limitless supplier liability*. This is the very reason why suppliers of chattel are required to act only on their actual knowledge or facts from which knowledge may be reasonably inferred.

*Phillips*, 84 F. Supp. 3d at 1226 (emphasis added). Without a clearly defined standard to follow—best provided by statute—persons transferring ammunition will be faced with the inevitable dilemma of not knowing what type or amount of inquiry into the transferee is "reasonable" and thus legally sufficient. As a result, every transfer of ammunition subsequently used in a crime can be alleged to have been unreasonable and subject to litigation based on an alleged inadequate inquiry. This dilemma is why courts have long recognized that ammunition sellers do not owe a duty of inquiry. *See* e.g., *Bryant v. Winn–Dixie Stores, Inc.*, 786 S.W.2d at 549.

### 2. The ammunition purchased was *not* "suitable for use only in a handgun."

Plaintiffs also fail to satisfy the second element of Section 922(x)(1)(B) violation – that the ammunition was "suitable for use only in a handgun" – because their claim that LuckyGunner sold .38 caliber ammunition that is "suitable for use only in a handgun" is conclusory and not well-pled.   Nor could Plaintiffs ever sufficiently plead facts to support this conclusion because there is a long list of commercially available long-guns (*i.e.*, not "a handgun") designed to fire such ammunition.[10]   *See Wal-Mart Stores, Inc.v. Tamez*, 960 S.W. 2d 125, 128-130 (Tex. App.—Corpus Christi 1997, pet. denied) (holding ammunition seller was not negligent *per se* as a matter of law in selling ammunition to a 19-year-old person that could be fired in both a handgun and a rifle).

---

[10] A "handgun" is defined by 18 U.S.C. § 921(a)(29).  In contrast, long-guns, *i.e.*, a "shotgun" and a "rifle" are defined by 18 U.S.C. § 921(a)(5) and (a)(7), respectively.  Commercially available rifles that are chambered for .38 special caliber ammunition include the following firearms: http://www.winchesterguns.com/products/rifles/model-1873/model-1873-current-products/model-1873-carbine.html (last visited on Apr. 28, 2020); http://www.winchesterguns.com/products/rifles/model-1866/model-1866-current-products/1866-deluxe-octagon.html (last visited on Apr. 28, 2020); https://www.henryusa.com/rifles/big-boy-x-model/ (last visited on Apr. 28, 2020); https://www.henryusa.com/rifles/single-shot-rifle/ (last visited on Apr. 28, 2020); https://www.henryusa.com/rifles/henry-big-boy-carbine/ (last visited on Apr. 28, 2020); https://rossiusa.com/lever-action/r92-357mag-16-58-rds-triple-black/ (last visited on Apr. 28, 2020); https://www.cimarron-firearms.com/1866-short-rifle-38-special-20-oct-barrel.html (last visited on Apr. 28, 2020); https://www.cimarron-firearms.com/1866-carbine-with-saddle-ring-38-special-19-rnd-barrel.html (last visited on Apr. 28, 2020); https://www.marlinfirearms.com/lever-action/model-1894/model-1894c (last visited on Apr. 28, 2020); https://www.taylorsfirearms.com/long-guns/cartridge-rifles/1866-lever-action/1866-rifle.html (last visited on Apr. 28, 2020); https://www.uberti-usa.com/1866-yellowboy-rifle (last visited on Apr. 28, 2020). Although potentially subject to the judicial notice doctrine, *see* Fed. R. Evid. 201(b), these public websites are *not* provided for consideration under Rule 12(b)(6) but rather to underscore Plaintiffs' inability to ever, in good faith, sufficiently re-plead their negligence *per se* claim.

16

In challenging LuckyGunner's sale of the .38 caliber ammunition, Plaintiffs seek to rewrite the operative phrase, "suitable for use *only* in a handgun" (emphasis added) to read: "suitable for use in a handgun." Their revision renders the word "only" superfluous, and violates the well-established rule of statutory construction that all words used in a statute are to be given their effect. *Moskal v. United States*, 498 U.S. 103, 109 (1990) (noting the "established principle that a court should give effect, if possible, to every clause and word of a statute") (internal quotations and citations omitted). Were Plaintiffs' flawed interpretation of the operative phrase accepted, legislative intent would be frustrated and application of federal firearms statutes nationwide would be altered in ways not intended by Congress—effectively criminalizing lawful transfers of many types of hunting and sporting long gun ammunition to persons under 21 years old. The plain language of Section 922(x)(1)(B) demonstrates this is not the outcome Congress intended.

### C.    Plaintiffs' Attempt to Circumvent the Legislative Branches of Government and Improperly Impose a Duty in Persons Selling Ammunition to Investigate Purchasers.

As discussed above, Plaintiffs' interpretation of the operative language of Section 922(x)(1)(B) and (x)(2)(B) is flawed, and would create a violation when a person transfers ammunition to a juvenile that is suitable for use in both long guns and handguns (*i.e.*, ammunition *not* "suitable for use only in a handgun."). Plaintiffs are thus attempting to rewrite federal statutory law by seeking to impose—through judicial fiat—a duty on non-FFL holders (including private citizens) to conduct background checks before transferring, gifting or trading long gun ammunition—a duty impacting both the transferors and transferees that no federal or Texas state statute requires.

17

The role legislatures have in regulating firearms and ammunition sales is reflected in one of the stated purposes of the PLCAA: "[t]o preserve and protect the Separation of Powers doctrine" found in the United States Constitution. 15 U.S.C. § 7901(b)(6). Congress deemed the PLCAA necessary because "liability actions" were seen as "attempt[s] to use the judicial branch to circumvent the legislative branch of government." 15 U.S.C. § 7901(a)(8). Here, Plaintiffs seek to do exactly that: circumvent the policy choice made by Congress, and implicitly by the Texas legislature, that ammunition sellers do not have a duty to inquire, *i.e.*, conduct a background investigation, on purchasers.

Courts across the country have consistently held that, with respect to firearms and ammunition, courts should not "create new standards of conduct for sellers when legislatures have declined to incorporate such standards into statutory schemes." *Heatherton*, 445 F.Supp. at 304-05 (declining to impose duty to investigate on firearm sellers); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1121 (Ill. 2004) ("[T]here are strong public policy reasons to defer to the legislature in the matter of regulating the manufacture, distribution, and sale of firearms."); *Penelas v. Arms Tech., Inc.* 778 So. 2d 1042, 1045 (Fla. App. 2001) ("[T]he judiciary is not empowered to 'enact' regulatory measures in the guise of injunctive relief. The power to legislate belongs not to the judicial branch of government, but to the legislative branch."); *People v. Sturm, Ruger*, 761 N.Y. 2d 192, 203 (N.Y. App. 2003) ("As for those societal problems associated with, or following, legal handgun manufacturing and marketing, their resolution is best left to the legislative and executive branches."); *In re Firearms Cases*, 126 Cal. App. 4th 959, 985 (Cal. App. 2005) ("While plaintiffs' attempt to add another layer of oversight to a

highly regulated industry may represent a desirable goal … [e]stablishing public policy is primarily a legislative function and not a judicial function, especially in an area that is subject to heavy regulation.").[11]

Legislatures are able to enact laws that are uniformly applied, and they have institutional flexibility to amend or repeal them, if necessary. Most importantly, a legislative decision reflects, in theory, what the majority of citizens believe the law should be, which is particularly important in policy areas on which the public may be divided.  If a duty is to be imposed on ammunition transferors to investigate the backgrounds of persons to whom they sell, gift or trade ammunition, defining the scope of such a duty is— respectfully—the province of our federal and state legislative bodies, not this or any other court.

**D.    LuckyGunner has Immunity from Ordinary Negligence Actions under the PLCAA.**

Plaintiffs' ordinary negligence claim is barred by the PLCAA.  The clear and unambiguous language of the PLCAA demonstrates that Congress did not create an exception to ammunition seller/distributor immunity for ordinary negligence actions. *See* 15 U.S.C. § 7903(5)(A)(i)-(vi);  *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135-36 (9th Cir. 2009) ("Congress clearly intended to preempt common-law claims, such as general tort theories

---

[11] *See also Hamilton v. Beretta U.S.A Corp.*, 96 N.Y. 2d 222, 239-40 (N.Y. App. 2001) ("[W]e should be cautious in imposing novel theories of tort liability while the difficult problem of illegal gun sales remains the focus of a national policy debate."); *McCarthy v. Olin Corp.*, 119 F. 3d148, 157 (2d Cir. 1997) ("To impose a duty on ammunition manufacturers to protect against criminal misuse of its product would likely force ammunition products—which legislatures have not proscribed, and which concededly are not defectively designed or manufactured and have some socially valuable uses—off the market due to the threat of limitless liability.").

of liability[,]" including "classic negligence" claims).  If the patent omission of ordinary negligence from the enumerated exceptions were not enough to reach that conclusion, Congress's enumeration of two exceptions with a basis in negligence law—negligent entrustment and negligence *per se*—should end any debate. *See Ileto*, 565 F.3d at 1135 n. 6 ("That exception demonstrates that Congress consciously considered how to treat tort claims. While Congress chose generally to pre-empt all common-law claims, it carved out an exception for certain specified common-law claims (negligent entrustment and negligence *per se*).").

Nevertheless, Plaintiffs allege that Section 922(x)(1)(B) creates a duty that is broader than the statute's actual standard and includes a duty to exercise ordinary care in the sale of ammunition.  Indeed, Plaintiffs claim that "companies that sell or deliver firearms and ammunition have an obligation to exercise the highest duty of care[.]" (Yanas TAP at ¶127; Beazley FAP at ¶44.)  But there is no ordinary negligence exception to PLCAA immunity, let alone a duty to exercise the "highest duty of care." *See Delana v. CED Sales, Inc*., 486 S.W.3d 316, 321-22 (Mo. 2016) (reiterating that the PLCAA expressly preempts all general negligence actions seeking damages resulting from the criminal or unlawful use of a firearm); *In re Estate of Kim ex rel Alexander*, 295 P.3d at 386 ("The statutory exceptions do not include general negligence, and reading a general negligence exception into the statute would make the negligence *per se* and negligent entrustment exceptions a surplusage."); *Jefferies*, 916 F.Supp.2d at 46 (PLCAA "unequivocally" barred plaintiff's negligence claim against the manufacturer of an "assault

weapon."); *Gilland*, 2011 WL 2479693 at **15-16 (PLCAA does not permit common law negligence claims to proceed).

Plaintiffs' attempt to shoehorn an ordinary negligence standard into one of the six enumerated exceptions to PLCAA immunity should be rejected. Plaintiffs' ordinary negligence claim should be dismissed because it amounts to "a violation of a legal interest that does not exist." *Ross v. State of Texas*, Civ. A. No. H–10–2008, 2011 WL 5978029, *8 (S.D. Tex. Nov. 29, 2011).

### E. LuckyGunner Did Not Owe a Duty to Protect Plaintiffs from the Shooter's Intentional Criminal Acts.

Even if Plaintiffs could avoid PLCAA immunity for an ordinary negligence action, and had sufficiently pleaded a negligence *per se* action, their claims should still be dismissed. Under Texas law, LuckyGunner did not owe a duty to protect Plaintiffs against the shooter's criminal acts. In Texas, "[t]here is no duty to control the conduct of third persons absent a special relationship between the defendant and the third party, such as employer-employee, independent contractor-contractee, parent-child." *Allen v. Wal-Mart Stores, LLC*, No. CV H-16-1428, 2017 WL 978702, at *10 (S.D. Tex. Mar. 14, 2017) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W. 2d 523, 525 (Tex. 1990)). Within these special relationships, there is a presumed right and ability to control the conduct of third persons, and in the absence of such a relationship there is no duty to control a third person's conduct causing harm. *Loram v. Maintenance of Way, Inc. v. Ianni*, 210 S.W. 3d 593, 596 (Tex. 2006). Here, because LuckyGunner did not have a recognized special relationship with the purchaser, it had no right or ability to control the purchaser's

21

criminal use of the ammunition, and it did not have a duty to protect others from his criminal conduct.

Under very limited circumstances, Texas courts have recognized a duty to protect against a third party's conduct in the absence of a special relationship—but only when the third party conduct is unquestionably the foreseeable result of the defendant's alleged negligence. *See, e.g.*, *El Chico Corp. v. Poole*, 732 S.W. 2d 306, 311-12 (Tex. 1987) (holding that a tavern owner owed a duty to not serve alcohol to a person who it knew or should have known was intoxicated because "[t]he risk and likelihood of injury from serving alcohol to an intoxicated person whom the licensee *knows* will probably drive a car is as readily foreseen as injury resulting from setting loose a live rattlesnake in a shopping mall."); *Otis Engineering Corp. v. Clark*, 668 S.W. 2d 307, 308-11 (Tex. 1983) (holding that employer who sent an employee home in an "extreme state of intoxication" owed a duty to person harmed by employee's negligence). The court in these cases imposed a duty on the tavern owner and employer to prevent another from driving while intoxicated because they had knowledge of both the person's intoxication and his intention to drive. The foreseeable consequences of driving while intoxicated was not questioned.

However, in other circumstances, courts applying Texas law have refused to impose a duty to control the conduct of another in the absence of a special relationship. For example, in *Allen*, *supra*, the court declined to recognize a duty on the part of Wal-Mart to protect the plaintiff's decedent from harming herself despite an allegation that the harm was reasonably foreseeable. The plaintiff sued Wal-Mart alleging claims sounding in negligence and negligence *per se* predicated on the sale of an "abusable volatile chemical

in the form of a compressed inhalant" that was ultimately purchased and used by the plaintiff's decedent. *Allen*, at 2017 WL 978702, at \*2. Wal-Mart moved to dismiss the case. In response the plaintiff argued that Wal-Mart owed the decedent a duty to refrain from this sale because, *inter alia*, it was "reasonably foreseeable" that the product would be "misused" based on the nature of the chemical and the decedent's purchase of a towel that "could be used as paraphernalia" to inhale the chemical. *Id*. at \*3.   In rejecting Plaintiffs' argument, the court held that the plaintiff's allegations "did not rise to the level required by *Twombly*" to support a finding that it was reasonably foreseeable that the decedent intended to use the chemical product and the towel to harm herself.  *Id*. at \*16.

With regard to ammunition sales, Texas courts and courts in other jurisdictions recognize that intentional criminal conduct is not the foreseeable, even when the sale is made to an underage person. "Unlike alcohol, the sale of ammunition does not impair the user." *Cowart v. Kmart Corp.*, 20 S.W. 3d 779, 784 (Tex. App.—Dallas 2000, pet. denied) (holding ammunition seller could not foresee that a sale to a seventeen year old would result in intentional misuse of the ammunition).  "While statutes regulating alcohol sales to minors intend to prevent negligence that foreseeably occurs as a result of the minor's impaired judgment resulting from drinking the intoxicating substance, statutes regulating the sale of ammunition to minors intend to prevent injuries from the misuse of a dangerous instrumentality by those too young to appreciate the danger." *Id*.; *see also Tamez*, 960 S.W. 2d at 131 (holding that ammunition seller did not breach a duty to a third party by selling ammunition to an alleged underage person in the absence of evidence that purchaser "displayed immaturity or incompetence"); *Chapman v. Oshman's Sporting Goods, Inc.*,

23

792 S.W. 2d 785, 788 (Tex. App.—Houston [14th Dist.] 1990, writ. denied) (holding intentional criminal conduct was not the foreseeable result of the sale of a handgun to an underage buyer).[12]   Reasonable foreseeability—whether addressed in connection with the question of duty or proximate cause—is "not measured by hindsight, but instead by what the actor knew or should have known at the time of the alleged negligence." *Boren v. Texoma Medical Center, Inc.*, 258 S.W. 3d 224, 230 (Tex. 2008).  "For a risk of harm to be foreseeable, the injury must be of such a general character as might reasonably be anticipated, and the injured party should be so situated with relation to the wrongful act that injury to him or one similarly situated might reasonably have been foreseen." *Id.*

Again, even though LuckyGunner is not alleged to have known the purchaser was under 21 years old, merely knowing or having a reason to know that an ammunition purchaser is a minor does not make the purchaser's subsequent criminal acts foreseeable. In *Holder v. Bowman*, No. 07-00-0126-CV, 2001 WL 62596 (Tex. App.—Amarillo Jan. 25, 2001, pet. denied), a pawn shop sold ammunition to a 14-year-old boy, who subsequently used the ammunition to commit murder. In affirming summary judgment for the pawn shop, the court held that the pawn shop was not liable for negligently causing the

---

[12] *See also Rains v. Bend in the River*, 124 S.W. 3d 580, 594 (Tenn. App. 2003) (finding ammunition sellers should "be held to foresee only the sorts of misuse or mishandling of ammunition that results from the purchaser' being too young to appreciate the danger of ammunition"); *Robinson v. Howard Bros. of Jackson, Inc.*, 372 So. 2d 1074, 1076 (Miss. 1979) (holding ammunition seller could reasonably assume that underage buyer would obey the criminal law, and it was not reasonably foreseeable that the sale of ammunition would result premeditated murder); *Drake v. Wal-Mart, Inc.*, 876 P.2d 738, 741 (Okla. App. 1994) (seller of handgun to an underage an person "could not be reasonably expected to foresee" person's suicide); *Williams ex rel. Raymond v. Wal-Mart Stores East, L.P.*, 99 So. 3d 112 (Miss. 2012) (finding underage buyer of ammunition was old enough to appreciate the danger of misusing ammunition, and holding that seller had no reason to expect buyer would commit an intentional criminal act).

victim's death because the minor's criminal activity was not sufficiently foreseeable.  The

court reasoned that:

> A seller of firearms or ammunition generally has the right to assume
> that a minor will act in a law abiding manner. While situations may
> exist where a seller has specific information available to him which
> could make criminal activity foreseeable as the result of the sale of a
> firearm or ammunition to a minor, in this instance, there was no
> evidence presented … to show that appellee had any facts from which
> he should have been able to foresee [the minor's] subsequent criminal
> act.

*Id.* at *5. In this case, there is no well-pled allegation that LuckyGunner should have been

able to foresee the shooter's criminal acts.  It is "not . . . proper to assume that [a plaintiff]

can prove facts that it has not alleged."  *Associated Gen. Contractors of Calif*, 459 U.S. at

526.

There can be no presumption that the distribution or sale of ammunition carries a

risk of harm.  Ammunition is the subject of lawful and constitutionally protected

transactions everyday all across the country, and it is used safely for entirely lawful

purposes by persons young and old. *See Jackson v. City & County of San Francisco*, 746

F.3d 953, 967 (9th Cir. 2014) (Second Amendment right to possess firearms implies a right

to sell and obtain the ammunition necessary to use them). There is simply no basis in

Plaintiffs' allegations on which to conclude that the reasonably foreseeable result of the

ammunition sale in this case was murder.

### F.   Plaintiffs' Remaining Claims Should Be Dismissed.

Plaintiffs allege several additional claims against LuckyGunner that require a viable

underlying theory of liability.  For example, "civil conspiracy" is not an independent cause

25

of action. *See Four Bros. Boat Works, Inc. v. Tesoro Petrol. Cos., Inc.*, 217 S.W.3d 653, 668 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). It is a derivative tort in which a defendant's liability is predicated on liability for some underlying tort. *See id.* The same holds true for Plaintiffs' "piercing the corporate veil" allegations, which is not a cause of action but, instead, a means of imposing liability for an underlying cause of action. *Wilson v. Davis*, 305 S.W. 3d 57, 68 (Tex. App.—Houston [1st Dist.] 2009, no pet.). If Plaintiffs negligence and negligence *per se* claims fail, so must their civil conspiracy and piercing the corporate veil allegations.

Plaintiffs' "gross-negligence" claim fails for a similar reason. Where a negligence claim fails, a gross-negligence claim also fails because a finding of ordinary negligence is the prerequisite. *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 201-02 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Shell Oil Co. v. Humphrey*, 880 S.W. 2d 170, 174 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (negligence prerequisite for finding of gross negligence). Again, if Plaintiffs negligence and negligence *per se* claims fail, so must their gross negligence claim.

The Beazley Plaintiffs have included a vaguely pleaded *res ipsa loquitur* liability theory against all the defendants, including the shooter and his parents, but it is not a separate cause of action. *Jones v. Tarrant Cnty. Util. Co.*, 638 S.W. 2d 862, 865 (Tex. 1982). Rather, it is a rule of evidence that has no application to the alleged circumstances of this case. The rule will apply only if a plaintiff establishes that (1) the character of the incident is such that it would not ordinarily occur in the absence of negligence and (2) the instrumentality causing the injury is shown to have been under the management and control

26

of the defendant. *Id*. at 865. The purpose of the rule is to relieve a plaintiff of the burden of proving a specific act of negligence by a defendant when it is impossible for the plaintiff to determine the sequence of events, or when the defendant has superior knowledge to determine the cause of an incident. Plaintiffs do not plead any facts justifying application of the rule, nor can they under the circumstances alleged. The firearms and ammunition were under the control of the shooter at the time of the incident, not LuckyGunner, and Plaintiffs have alleged and are able to prove the sequence of events that resulted in their harm.

## CONCLUSION

For all of the foregoing reasons, Defendant LuckyGunner, LLC requests that the Court grant oral argument to evaluate this motion and grant its motion to dismiss. LuckyGunner, LLC requests any further relief the Court deems appropriate.

27

RESPECTFULLY SUBMITTED,

 /s/ A.M. "Andy" Landry III
A.M. "Andy" Landry III
State Bar of Texas # 11868750
S.D. Texas Bar # 15187
GRAY REED & MCGRAW LLP
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone (713) 986-7000
Facsimile (713) 986-7100
Email: alandry@grayreed.com

**ATTORNEY IN CHARGE,
LUCKYGUNNER, LLC D/B/A
LUCKYGUNNER.COM**


OF COUNSEL:

Andrew A. Lothson (PHV application
forthcoming)
SWANSON, MARTIN & BELL, LLP
330 North Wabash, Suite 3300
Chicago, Illinois 60611
Office: (312) 321-9100
Direct: (312) 923-8274
Fax:    (312) 321-0990
Email: alothson@smbtrials.com

4839-6725-1388.1

## CERTIFICATE OF SERVICE

I certify that on May 8, 2020, a copy of this document was served on all counsel in accordance with the Federal Rules of Civil Procedure through use of the Court's electronic-notification system, which provides automatic notice of service to registered users. This document has also been served via First Class Mail and by email on the following recipients:

Clint E. McGuire
MARTINEZ & MCGUIRE PLLC
17227 Mercury Drive, Suite B
Houston, Texas 77546
Tel: 281-286-9100
Fax: 281-286-9105
clint@mmtriallawyers.com

Darrell A. Apffel
APFFEL LEGAL, PLLC
104 Moody Ave #101
Galveston, Texas 77550
Tel: 409-744-3597
Fax: 281-612-9992
darrell@apffellegal.com

Alton C. Todd
The Law Firm of Alton C. Todd
312 S. Friendswood Drive
Friendswood, Texas 77546
Tel: (281) 992-8633
Fax: 281-648-8633
alton@actlaw.com

Ron J. Rodgers
RODGERS LAW GROUP, PLLC
One Harbour Square
3027 Marina Bay Drive, Suite 310
League City, Texas 77573
Tel: 281-884-3891
Fax: 281-884-3992
ron@rodgerslawgroup.com

Dimitrios Pagourtzis
1130 CR 136A
ALVIN TX 77511

*/s/ A.M. "Andy" Landry III*
A.M. "Andy" Landry III

4839-6725-1388.1