**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| ROSIE YANAS, et al. | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO.: 3:20−cv−00140 |
| | § | |
| ANTONIOS PAGOURTZIS, et al. | § | |
| *Defendants.* | § | |

**DEFENDANT RED STAG FULFILLMENT, LLC'S MOTION TO DISMISS**
**AND MEMORANDUM OF LAW IN SUPPORT**

Defendant Red Stag Fulfillment, LLC ("Red Stag"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectfully moves the Court to dismiss Plaintiffs' Amended Petitions for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

**INTRODUCTION**

This lawsuit arises from the criminal shooting at the high school in Santa Fe, Texas. Plaintiffs, here, include two groups – the "Yanas Plaintiffs" and the "Beazley Plaintiffs" – who were tragically injured or killed by the shooter.

On March 4, 2020, the Yanas Plaintiffs filed their Third Amended Petition (DE 1-3 at pp. 133-183, the "Yanas TAP" or "TAP"). On April 13, 2020, the Beazley Plaintiffs filed their First Amended Petition (DE 1-3 at pp. 193-218, the "Beazley FAP" or "FAP"). Both petitions include Red Stag, a warehouse order fulfillment company (or third-party logistics company) from Tennessee, two other Tennessee resident companies—

LuckyGunner, LLC ("LuckyGunner") and MollenhourGross, LLC—and two Tennessee
resident individuals, Jordan Mollenhour and Dustin Gross—as defendants.

Plaintiffs allege Pagourtzis purchased ammunition from LuckyGunner and used that
ammunition during his criminal shooting.  Red Stag allegedly packaged the LuckyGunner
order, and, at LuckyGunner's direction, mailed the order through FedEx to Pagourtzis.  The
Pagourtzis order from LuckyGunner forms the basis of Plaintiffs' allegations against all of
the Tennessee resident defendants, including Red Stag.[1] These allegations are insufficient
to establish personal jurisdiction over Red Stag in Texas.

Multiple federal district courts—including in this District—have held that Red
Stag's business activities of fulfilling another company's product order and mailing those
orders into the forum state do not constitute "purposeful availment" and, therefore, do not
establish minimum contacts required to vest personal jurisdiction in the forum court.  *See
US LED, Ltd. v. Nu Power Assocs., Inc.*, No. CIV.A H-07-0783, 2008 WL 4838851, *4
(S.D. Tex. Nov. 5, 2008) (rejecting personal jurisdiction where the defendant warehouse
operator "shipp[ed] another's product at the behest of a third party").  Because Plaintiffs'
jurisdictional allegations and the facts of Red Stag's alleged business activities do not

---

[1] All of the Tennessee resident defendants have moved to dismiss the TAP and FAP under Rule
12(b)(2) and/or 12(b)(6).  They have also moved to dismiss the related case styled as *Tisdale, et
al. v. Pagourtzis, et al.*, Case No. 3:20-cv-00141. Defendants have reviewed Galveston District
Court Rules of Practice (No. 6) for Rule 12(b) motions, which also references Rule 12(a)'s "time
requirements" for Rule 12(b) motions.  Because the present action was removed from state court,
Rule 81(c) is also implicated, and, out of an abundance of caution, Defendants file their Rule 12(b)
motions and forego serving Plaintiffs with letters of intent to file motions to dismiss. Although
Defendants do not believe amendments to the operative petitions would have merit or cure the
dispositive arguments presented in Defendants' motions, the option to amend remains under the
practice in this Division and Rule 15(a)(1)(B).

2

establish the requisite minimum contacts between Red Stag and Texas, Red Stag should be dismissed under Rule 12(b)(2).

Additionally, Plaintiffs have failed to state a viable cause of action against Red Stag, which requires dismissal of Plaintiffs' claims under Rule 12(b)(6).  Under the facts alleged, LuckyGunner (and by extension, Red Stag) did not violate any law applicable to ammunition sales in Texas, and neither the federal statute governing LuckyGunner's sale nor Texas law imposed a duty on LuckyGunner or Red Stag to conduct an investigation into the purchaser's represented age, or a duty to protect Plaintiffs from the purchaser's subsequent criminal acts. The existence of a duty is question of law for the Court to decide. *Otis Engineering Corp. v. Clark*, 668 S.W. 2d 307, 308-11 (Tex. 1983).

Plaintiffs' case should be dismissed for the additional reason that Red Stag has threshold immunity under the Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901 *et seq*. ("PLCAA"), from any claim based, in whole or in part, on its alleged failure to exercise reasonable care to verify that the purchaser represented his age truthfully. Whether Red Stag is entitled to immunity under the PLCAA is a question of law appropriately decided under Rule 12(b)(6).  *See, e.g.*, *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1220 (D. Colo. 2015); *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 44 (D.D.C. 2013).   For any or all of these reasons, Red Stag's motion to dismiss should be granted.

## FACTUAL BACKGROUND

Plaintiffs sue Red Stag for negligence, negligence *per se*, and derivative claims of civil conspiracy and gross negligence.  (TAP at ¶¶125-141, 152-165, 166-174, 185-189;

FAP at ¶¶41-49, 50-51, 75-78, 79-80.)  Plaintiffs' petitions contain the following, bare-bones allegations concerning personal jurisdiction and Red Stag's relationship with any state, including Texas: Red Stag is a Tennessee limited liability company with its home office in Knoxville, Tennessee; Red Stag does not maintain a place of business in Texas and is not amenable to service in Texas; rather, Red Stag "conducts business in the State of Texas" and the lawsuit arose from Red Stag's business in Texas."  (TAP at ¶14; FAP ¶15.)

Plaintiffs' claims against Red Stag are predicated on the alleged conduct of another party, LuckyGunner.  Plaintiffs allege LuckyGunner sold ammunition to Pagourtzis through its website.  (TAP at ¶¶ 21-24, 73-78, 100, 128, 133, 153, 187; FAP ¶¶ 30-32, 45, 48.)  With respect to the sales transaction, Plaintiffs allege Pagourtzis (1) went to Luckygunner.com; (2) purchased ammunition with a prepaid American Express gift card; and (3) was required to "check a box [on LuckyGunner's website] agreeing to a standard set of terms and conditions, one of which is that the purchaser [Pagourtzis] is not under 21." (TAP at ¶¶73, 74. 129, 130, 154, 155; *see also* FAP at ¶¶30-32, 45, 47, 48.)  Plaintiffs then allege, "Luckygunner approved his order and sent it to Red Stag for fulfillment." (TAP at ¶75; *see also* FAP at ¶31.)

Red Stag's alleged unlawful acts are tangential to its involvement with LuckyGunner. While Plaintiff alleges LuckyGunner does not verify some of its customers' ages, Plaintiffs allege Red Stag: (1) knows that LuckyGunner does not verify the age of most of its customers [TAP at ¶¶131, 134, 157, 159; FAP at ¶ 47]; (2) mailed ammunition to Pagourtzis via FedEx without verifying Pagourtzis's age [TAP at ¶¶75, 77, 135; FAP

¶¶47, 49 61, 63, 120, 136, 138]; and, as a result, (3) violated 18 U.S.C § 922(x)(1)(B) and

aided and abetted the violation of 18 U.S.C § 922(x)(2)(B).  (TAP at ¶¶140, 161; FAP ¶76.)

## ARGUMENT

### A.    The Court Lacks Personal Jurisdiction over Red Stag.

A federal court may exercise jurisdiction over a nonresident defendant only if the

long-arm statute of the forum state confers personal jurisdiction over that defendant, and

the exercise of such jurisdiction comports with due process under the United States

Constitution.  *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir.

2003).  The due process inquiry focuses upon whether the nonresident defendant has

certain minimum contacts with Texas such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice. *See International Shoe Co. v.*

*Washington*, 66 S.Ct. 154, 158 (1945); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d

309, 311 (5th Cir. 2007); *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).  A

minimum contacts analysis requires the court to "determine whether the nonresident has

purposefully availed himself of the privilege of conducting activities within the forum state,

thus invoking the benefits and protections of its laws." *Bearry v. Beech Aircraft Corp.*, 818

F.2d 370, 374 (5th Cir. 1987); *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir.

1990) ("the nonresident defendant purposefully must have established minimum contacts

with the forum state such that he invoked the benefits and protections of the forum's laws

and thus reasonably could anticipate being haled into court there.").

A defendant's purposeful contacts may vest a court with either "general" or

"specific" jurisdiction over the defendant.  *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d

429, 431 (5th Cir. 2014). General jurisdiction is party-focused, whereas specific jurisdiction is transaction-focused.

General jurisdiction requires a showing that the defendant's purposeful contacts are so "continuous and systematic" so as to render the defendant essentially at home in Texas. *Monkton Ins. Servs. Ltd.*, 768 F.3d at 432. The contacts required to support general jurisdiction are so substantial as to permit the court's exercise of personal jurisdiction over a defendant for acts unrelated to the instant cause of action. *Cent. Freight Lines Inc.*, 322 F.3d at 381.

Specific jurisdiction, in contrast, exists when the cause of action relates to or arises out of the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S. Ct. 1868, 1872 n.8 (1984). A three-part inquiry determines whether specific jurisdiction exists: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Monkton Ins. Servs., Ltd.*, 768 F.3d at 433. "The fact that a Texas plaintiff suffered some harm in Texas is insufficient to establish specific jurisdiction in this forum." *US LED, Ltd.*, 2008 WL 4838851, at *4. "Rather, the focus of the specific jurisdiction inquiry is on 'the relationship between the defendant, the forum, and the litigation.'" *Id*. "Contacts that are 'random,' 'fortuitous,' or 'attenuated' do not satisfy the minimum contacts requirement." *Id*. (citing *Moncrief Oil Int'l Inc.*, 481 F.3d at 312).

6

Under Rule 12(b)(2), courts may also consider record evidence, *e.g.*, a declaration, which Red Stag attaches hereto. Plaintiffs have the burden to make a *prima facie* showing that personal jurisdiction is proper. *Monkton Ins. Servs., Ltd.*, 768 F.3d at 431.

1.  **Plaintiffs do not (and cannot) allege facts that establish the requisite minimum contacts between Red Stag and Texas for either general or specific jurisdiction.**

Plaintiffs have failed to allege facts to satisfy the threshold due process concerns of personal jurisdiction. There is no allegation in the FAP that could establish Red Stag purposefully availed itself of Texas. *See Beech Aircraft Corp.*, 818 F.2d at 374; *Asarco, Inc.*, 912 F.2d at 786; *Walden v. Fiore*, 571 U.S. 277, 285-286 (2014) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.").

i.  **Plaintiffs' allegations do not support "general" personal jurisdiction.**

The Beazley Plaintiffs make no general personal jurisdiction allegations against Red Stag. The Yanas Plaintiffs' general personal jurisdictional allegations against Red Stag are conclusory. They allege Red Stag "conducts business" in Texas. (TAP at ¶14.) "But vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 611 (5th Cir. 2000). Plaintiffs' allegations are legally insufficient to create general personal jurisdiction in Texas over Red Stag which, instead, would require that Red Stag's purposeful contacts "are so 'continuous and

systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

The "paradigm" forums in which a corporate defendant is "at home" are its place of incorporation and its principal place of business. *Daimler*, 571 U.S. at 137; *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (same).   Plaintiffs have not alleged contacts between Red Stag and Texas that "are so 'continuous and systematic' as to render [it] essentially at home in the forum State."   To the contrary, Plaintiffs allege Red Stag is a foreign limited liability company located in the State of Tennessee and does not maintain a regular place of business in Texas.   Plaintiffs' factual allegations affirm Red Stag is at home in Tennessee, where it is organized, headquartered, and from where it conducts its business.

### ii. Plaintiffs' allegations do not support "specific" personal jurisdiction.

The only alleged business conducted by Red Stag for the purposes of specific personal jurisdiction are Red Stag's business dealings with LuckyGunner—a separate Tennessee limited liability company.   (TAP at ¶¶62, 75, 76; *see also id*. at ¶13; FAP at ¶33, 79.)[2]   LuckyGunner – not Red Stag – is alleged to have had purposeful contact with Texas or a Texas resident:

- Pagourtzis visited defendant LuckyGunner's website where he ordered and purchased ammunition [TAP at ¶¶21-24, 100; FAP at ¶¶30-32];

- LuckyGunner approved the order and sold the ammunition to

---

[2] The only plausible inference from two Tennessee companies doing business with each other is that the business was conducted in Tennessee.

Pagourtzis [TAP at ¶¶73-78, 128, 133, 153, 187; FAP 45, 48];

- LuckyGunner then sent the order for fulfillment and mailing by Red Stag [TAP at ¶¶62, 75, 76; FAP at ¶¶33];

- Red Stag mailed the order via FedEx to Pagourtzis [TAP at ¶¶41, 75-77, 131, 134, 156, 63; FAP at ¶33];

- Pagourtzis used the ammunition "sold" and "shipped" or "provided" to him by LuckyGunner to perpetrate his crimes.  (TAP at ¶80; FAP at ¶34.)

Missing from the petitions is any allegation that Red Stag had contact with Pagourtzis or anyone in Texas, let alone that it somehow had Texas-specific involvement in the transaction between LuckyGunner and Pagourtzis.

Red Stag's alleged fulfillment of another's product order for delivery at the behest of a third party cannot form the basis of the requisite purposeful availment or minimum contacts with Texas.  Indeed, courts in this District and district courts around the country have rejected personal jurisdiction based on similar conduct.  In *US LED, Ltd. v. Nu Power Assocs., Inc.*, No. CIV.A H-07-0783, 2008 WL 4838851 (S.D. Tex. Nov. 5, 2008), the plaintiff filed suit in Texas against a manufacturer of power supply units for alleged defects in the units.  *Id*. at *1.  The plaintiff also sued RSI (a Nevada corporation), which was the warehouse operator that shipped the units to the plaintiff.  *Id*.  The court held it did not have personal jurisdiction over RSI because RSI had not purposefully availed itself of Texas.  *Id*.  The court found the relationship between the manufacturer and the plaintiff did not involve RSI because the manufacturer had sent the units to RSI's warehouse and directed RSI to ship the units to the plaintiff.  *Id*. at **1, 4-5.  RSI's shipping of the units to a Texas resident at the behest of a third party did not support a finding of purposeful

availment to Texas. *Id*. at **4-5.

Multiple similar cases are illustrative:

- *LG Corp. v. Huang Xiaowen*, No. 16-CV-1162 JLS (NLS), 2017 WL 2504949, **4-5 (S.D. Cal. June 8, 2017) (rejecting personal jurisdiction over a New Jersey fulfillment company, N&K, because it did not target anyone known to be a California resident; it did not make any independent decisions to ship the product to any buyer in California; the client seller of the product sent N&K a communication directing it to ship the product to a California address; N&K did not operate a website or otherwise market or sell any products to California consumers; rather, it merely fulfilled shipments to different states based on consumer purchases from other websites)

- *C & A Int'l, LLC v. S. Bay Distribution*, No. 12-CV-180-JED-FHM, 2013 WL 5937432, *4 (N.D. Okla. Nov. 5, 2013) (rejecting personal jurisdiction over a California third-party logistics company (South Bay) and holding, "South Bay cannot be said to have reached out into Oklahoma and purposefully availed itself of the benefit of doing business in Oklahoma. Indeed, the business efforts of South Bay have been directed to its warehouse in California, where [the plaintiff's] products were stored and from which [the plaintiff's] products were distributed." And, like Red Stag in this case, South Bay did not purposefully avail itself of the forum state because "[a]ny such shipments to Oklahoma [by South Bay] were the result of the activities of third parties; namely, [the plaintiff]'s customers. The unilateral activity of a third party cannot constitute purposeful availment.")

- *Posada v. Big Lots, Inc.*, No. 10-CV-5693 DMC MF, 2011 WL 4550158, *3 (D.N.J. Sept. 29, 2011) (rejecting personal jurisdiction over a Pennsylvania distribution center and finding defendant's operation of a "distribution center that serves as a drop off/pick up location for interstate deliveries is not a basis for finding that [the defendant] purposefully availed itself of the laws and benefits of the states where those deliveries were made.")

Like the defendants in these cases (and other companies involved in third-party logistics and distribution of products), Red Stag's alleged contact with Texas is that it mailed or shipped a product order to Texas at the behest of LuckyGunner, *i.e.*, after (1)

Pagourtzis purchased the product from LuckyGunner, (2) LuckyGunner approved the order, and (3) LuckyGunner sent the order to Red Stag's Tennessee warehouse for fulfillment. (TAP at ¶¶21-24, 62, 73-78, 100, 128, 133, 153, 187; FAP at ¶¶30-34, 45, 48.) Plaintiffs have not alleged Red Stag purposefully availed itself of the laws of Texas. The result with respect to Red Stag in this case should be no different than the results outlined above—dismissal for the lack of personal jurisdiction.

### 2. Red Stag's declaration negates all bases for personal jurisdiction in Texas.

Assuming, *arguendo*, that Plaintiffs' jurisdictional allegations could satisfy their *prima facie* burden (they cannot), Red Stag's declaration rebuts and eliminates any contention that Texas courts can exercise either general or specific personal jurisdiction over it in this case.

With respect to the lack of general personal jurisdiction, the declaration of Red Stag's President affirms that general jurisdiction does not exist in Texas:

- Red Stag is a warehouse order fulfillment company, organized under the laws of Tennessee, and headquartered in Knoxville, Tennessee. (Declaration of Eric McCollom, attached as <u>Exhibit A</u> ("McCollom Decl.") at ¶¶3-4.)

- Red Stag is also registered as a foreign limited liability company in the State of Utah because its only non-Tennessee facility is located in Salt Lake City, Utah. (*Id*. at ¶5.)

- All of Red Stag's employees are located in Tennessee or Utah. (*Id*. at ¶6.)

- Red Stag stores, picks, and packs goods owned by clients of Red Stag for delivery to those clients' end-customers. (*Id*. at ¶¶7, 10-17.)

11

- Red Stag does not currently, and has never conducted business in Texas.  (*Id*. at ¶18.)

- Red Stag is not registered to do business in Texas. (*Id*. at ¶19.)

- Red Stag does not pay taxes in Texas.  (*Id*. at ¶22.)

- Red Stag does not maintain a bank account in Texas. (*Id*. at ¶23.)

- Red Stag does not maintain any property interests in Texas. (*Id*. at ¶24.)

- No Red Stag employee or agent has ever visited Texas to conduct business.  (*Id*. at ¶25.)

- Red Stag has never maintained a website from which Texas consumers can purchase products. (*Id*. at ¶26.)

Red Stag is *not* at home in Texas—rather, it conducts business from its home in Tennessee, or its warehouse in Utah.

With respect to specific personal jurisdiction, the crux of the issue is, again, purposeful availment, but with a focus on the transaction at issue. *Monkton Ins. Servs., Ltd*, 768 F.3d at 433.  Red Stag's declaration affirms it did not purposefully avail itself of the privilege of conducting business in Texas based on the facts at issue in this case:

- Red Stag does not operate a website or otherwise market or sell any products to Texas consumers. (McCollom Decl. at ¶26.)

- Red Stag is paid by its clients (not its clients' end-customers) for fulfilling orders pursuant to service agreements with its clients. (*Id*. at ¶16.)

- Red Stag does not own or hold title in the products it stores, picks and packs on behalf of its clients.  (*Id*. at ¶10.)

- Red stag does not ship products other than as directed by its clients, based on the end-customer's address submitted by the client.  Nor

does Red Stag make independent decisions to ship products other than as directed by its clients. (*Id.* at ¶¶10-11, 14-15.)

- All of the above facts are true with respect to the ammunition orders at issue in this case.  (*Id.* at ¶17.)

This activity does not vest this court with specific personal jurisdiction. *Monkton Ins. Servs., Ltd.*, 768 F.3d at 433; *US LED, Ltd.*, 2008 WL 4838851, **1, 4-5; *LG Corp.*, 2017 WL 2504949, at **4-5; *S. Bay Distribution*, 2013 WL 5937432, at *1; *Posada*, 2011 WL 4550158, at *3.

A finding of specific personal jurisdiction based on the act of fulfilling a retailer client's product orders and placing those orders with a third-party carrier (directed by the client) for delivery into Texas would be unprecedented and unconstitutional.  Because the Court lacks both general and specific personal jurisdiction over Red Stag, this Court should dismiss Plaintiffs' claims against Red Stag for lack of personal jurisdiction. [3]

### B.  Plaintiffs' Claims Against Red Stag Should be Dismissed Pursuant to Rule 12(b)(6).

All of Plaintiffs' claims against Red Stag are predicated on its involvement, however

---

[3] Plaintiffs' "civil conspiracy" allegations are irrelevant to personal jurisdiction.  Neither Texas nor Fifth Circuit precedent recognize an alleged conspiracy as a basis to exercise personal jurisdiction over non-resident defendants. *See Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004) (holding that to establish its *prima facie* case of personal jurisdiction, a plaintiff is required to demonstrate that the defendant individually, and not as part of the conspiracy, had minimum contacts with Texas); *Hanna v. Blanchette*, No. CIV.A. H-13-3119, 2014 WL 4185816, *5 (S.D. Tex. Aug. 21, 2014) ("the focus is on each individual defendant's contacts with the state, personal jurisdiction does not arise from a co-conspirator's acts directed at Texas."); *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) ("[W]e decline to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state.  Instead, we restrict our inquiry to whether [the defendant] itself purposefully established minimum contacts such that it would satisfy due process[.]").

13

attenuated, in LuckyGunner's sale of ammunition to Pagourtzis.   Pursuant to Rule 10(c), Red Stag adopts and incorporates herein all of LuckyGunner's Rule 12(b)(6) motion and arguments to dismiss Plaintiffs' TAP and FAP.

Plaintiffs have failed to state viable claims against Red Stag.   The PLCAA applies to this lawsuit, and although a well-pleaded negligence *per se* claim is an exception to PLCAA immunity, Plaintiffs' claim is not well-pled.   Plaintiffs have not alleged facts showing that LuckyGunner or Red Stag violated Section 922(x)(1)(B) because it knew the purchaser was a juvenile, or that the juvenile gave LuckyGunner or Red Stag a reasonable cause to believe he was not old enough to purchase the ammunition.   Indeed, Plaintiffs have alleged that contrary information was provided to LuckyGunner, *i.e.*, that the purchaser certified that he was not under 21 years old. To circumvent this alleged fact, Plaintiffs' seek to impose a much broader duty than Section 922(x)(1)(B) requires: a duty of inquiry—essentially a background check on ammunition purchasers—that neither Congress nor the Texas legislature has seen fit to require.

Plaintiffs' ordinary negligence claim is barred because the PLCAA does not provide an exception for ordinary negligence actions.   But even if Congress had fashioned such an exception to PLCAA immunity, Plaintiffs' ordinary negligence action fails because Red Stag did not owe Plaintiffs a duty under Texas law to protect them from the shooter's criminal acts. Plaintiffs' remaining derivative and collateral claims fail along with Plaintiffs' failed negligence and negligence *per se* claims.

4839-9156-5500.1

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant Red Stag Fulfillment, LLC requests that the Court grant oral argument to evaluate this motion and grant its motion to dismiss. Red Stag Fulfillment, LLC requests any further relief the Court deems appropriate.

15

RESPECTFULLY SUBMITTED,

 /s/ A.M. "Andy" Landry III
A.M. "Andy" Landry III
State Bar of Texas # 11868750
S.D. Texas Bar # 15187
GRAY REED & MCGRAW LLP
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone (713) 986-7000
Facsimile (713) 986-7100
Email: alandry@grayreed.com

**ATTORNEY IN CHARGE,**
**RED STAG FULFILLMENT, LLC**


OF COUNSEL:

Andrew A. Lothson (PHV application
forthcoming)
SWANSON, MARTIN & BELL, LLP
330 North Wabash, Suite 3300
Chicago, Illinois 60611
Office:  (312) 321-9100
Direct:  (312) 923-8274
Fax:     (312) 321-0990
Email:  alothson@smbtrials.com

Douglas T. Gosda
Texas Bar No. 08221290
SDTX Bar No. 4231
Manning, Gosda & Arredondo, L.L.P.
24 Greenway Plaza, Suite 525
Houston, Texas 77046
(713) 783-7070 (Telephone)
(713) 783-7157 (Telefax)
Email:  dgosda@mga-law.com

16

## CERTIFICATE OF SERVICE

I certify that on May 8, 2020, a copy of this document was served on all counsel in accordance with the Federal Rules of Civil Procedure through use of the Court's electronic-notification system, which provides automatic notice of service to registered users. This document has also been served via First Class Mail and by email on the following recipients:

Clint E. McGuire
MARTINEZ & MCGUIRE PLLC
17227 Mercury Drive, Suite B
Houston, Texas 77546
Tel: 281-286-9100
Fax: 281-286-9105
clint@mmtriallawyers.com

Darrell A. Apffel
APFFEL LEGAL, PLLC
104 Moody Ave #101
Galveston, Texas 77550
Tel: 409-744-3597
Fax: 281-612-9992
darrell@apffellegal.com

Alton C. Todd
The Law Firm of Alton C. Todd
312 S. Friendswood Drive
Friendswood, Texas 77546
Tel: (281) 992-8633
Fax: 281-648-8633
alton@actlaw.com

Ron J. Rodgers
RODGERS LAW GROUP, PLLC
One Harbour Square
3027 Marina Bay Drive, Suite 310
League City, Texas 77573
Tel: 281-884-3891
Fax: 281-884-3992
ron@rodgerslawgroup.com

Dimitrios Pagourtzis
1130 CR 136A
ALVIN TX 77511

*/s/ A.M. "Andy" Landry III*
A.M. "Andy" Landry III

17

4839-9156-5500.1